Jones, J.
The chief cause of the city’s complaint is that the order of the commission, upholding the schedule of rates proposed to be charged for the use of artificial gas, is unjust and unreasonable, and, especially, unauthorized, in view of the state of the record. This complaint rests upon the basis that since no valuation has been proved, as required by law, the commission erred in upholding the proposed schedule of rates. The hearing before the commission assumed an unusual and unique course of procedure. Two witnesses had been placed upon the stand by the utility, and *503 neither had testified as to the value of the property. A statement had been introduced by the public utility showing a claimed book valuation on its behalf of $1,095,418.27. This statement contained other items of outgo and income, and was testified to by a witness, who declared, however, that he knew nothing of the valuation item contained in the statement. There was an intimation by counsel for the city that the company carried $200,000 worth of bonds, and the record further disclosed that the taxation value of the company’s property was somewhere in the neighborhood of $175,000. However, there was no specific testimony as to the valuation of the company’s investment. At this stage of the case, the question whether the matter of valuation should be entered into was presented to the commission in the following colloquy:
“Mr. Bentley: * * *. Now, if the Commission please, we are prepared to go into the value of this plant. I do not know that the Commission cares to hear it inasmuch as there isn’t any basis of earnings estimated in this increased rate.
“Commissioner Waltermire: It is up to you to say what testimony you wish to present and not for us to dictate. If there are however no earnings shown, by this new rate, I do not see where it would be proper to spend much time on the valuation.
“Mr. Bentley: That was our notion about it.
“Commissioner Waltermire: Would the city prefer that they go into the question of the valuation of the property?
*504 “Mr. Garling: If I understand that the valuation is not considered in the deciding of this matter — do I understand that the total value of the property estimated in this report and as testified to by Mr. Pringle will not be considered in añy way?
“Commissioner Waltermire : If the rate does not show any return, why it would not be necessary for us to go into it.
“Mr. Garling: That is what I say; this investment would not be considered in the deliberations of the Commission at all.
“Commissioner Waltermire: No.”
The public utility law requires that whenever the commission, after hearing, determines that the rates proposed to be charged are unjust or unreasonable, it, with due regard among other things to the value of all property of the public utility used or useful, shall fix and determine a just and reasonable rate. It is evident from the proceeding before the commission, and from its order thereafter made, that its finding that the proposed rates were not unjust, unreasonable or excessive was not based upon any sufficient proof of the value of the utility’s property, and, were it not for the concession made in the record, and by the city’s counsel, the case should be reversed and remanded to the commission for further proceeding. While the action of the commission was technically erroneous, it was not only acquiesced in by counsel upon both sides, but the record itself discloses that the error *505 committed cannot possibly be prejudicial to the city. Counsel for the utility had stated in open court that they sought only sufficient earnings to cover absolute necessities and did not ask for rates sufficient to produce any return upon their investment.
The main contention between the'utility and the city was with reference to basing a schedule of rates covering the future operation of the utility from October, 1920, to October, 1921. The city maintained that its proof showed that the cost of operating expenses, especially that of oil, coke and coal, was declining and would continue to do so; on- the other hand the proof offered by the utility was to the effect that such costs would rise for the ensuing year, October, 1920, to October, 1921. While the commission’s engineer was not called and did not testify in the course of the hearing, his report to the Public Utilities Commission was on file, and was offered in evidence by the utility. That report showed that when the twelve months’ period ended, on October 21, 1920, the total utility expenses were $27,209.82; taxes, $3,853.21. His report showed further that at least $15,000 per year should be allowed as depreciation, and from the data obtainable the commission’s engineer estimated that the operating expenses for the next year would be increased by at least $8,000 on coal, coke and oil items. He therefore estimated the total operating expenses for the ensuing year at $54,063, and the total revenue for all purposes for the following year at $59,397, leaving a balance to apply as a return on the property of $5,334. The commission’s engineer concluded his report as fol *506 lows: “From my examination of the gas property I consider it worth several hundred thousand dollars so that this $5,334.00 annual return is only a fractional part of what would be considered a fair return oh the property value.”
Whether the • commission adopted the tentative valuation of its engineer allowing the depreciation item, and the further item of increased cost of oil, coke and coal, it is impossible to ascertain from this record, but whatever allowance the commission may have made for either item it is impossible to see how the city could have been prejudiced, for not only is there an intimation in the record, but it is practically conceded by counsel for the city in their brief, that there was at least a total tax valuation of the property amounting to about $175,-000, and that they could show that its actual valuation was about $200,000, and hence we are unable to disturb the commission’s finding on the ground that the items of depreciation and increased operating expenses are so unreasonable and unjust as to affect its order. Thus it is readily seen that if the commission erred it erred in favor of the city. If its engineer’s return of $5,334 should be accepted as the estimated earnings of the property for the ensuing year, and if the city’s apparent concession that the valuation of the property used and useful could be proven by it to be $200,000, it is evident that the rate of return based upon the engineer’s estimate would yield but about 2 7-10 per cent, upon the city’s conceded valuation. Therefore, there could have been no possible prejudice to the city, and a remanding of the case would under *507 the same testimony only have the effect of producing a similar order by the commission.
In compliance'with the order of the commission the utility gave bond in the sum and in an amount fixed by the commission. This bond had no surety, but was signed by the president and secretary of the Gas Light company. For the first time and in this court error is urged against the commission in this respect. This is not an undertaking such as is provided by law. It does not appear that the city ever protested to the commission that the bond lacked surety, nor was there any application made to the commission to make the bond secure by the addition of a surety, but an inspection of the entry approving the undertaking shows that the bond was permitted to be filed on the condition that the commission reserved to itself the right always to require the company to furnish other additional surety or sureties thereon. If the city felt that its rights were not secured by the undertaking it should have made its application in the first instance to the commission itself and not to this court.
For the reasons stated the order of the commission is affirmed.

Order affirmed.

Johnson, Hough, Robinson and Matthias, JJ., concur.